UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF AMTRUST BANK,<br><br>        Plaintiff,<br>  v.<br><br>TICOR TITLE COMPANY, a Washington corporation,<br><br>        Defendant. | Case No. C15-1029RSM<br><br>ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff Federal Deposit Insurance Corporation as Receiver of AmTrust Bank ("FDIC-R")'s Motion for Partial Summary Judgment, Dkt. #39, and Defendant Ticor Title Company ("Ticor")'s Motion for Summary Judgment, Dkt. #40. FDIC-R requests the Court rule as a matter of law that Ticor is liable for breach of contract. Ticor opposes FDIC-R's Motion, arguing that there are questions of fact precluding summary judgment. Ticor moves for summary judgment dismissal of FDIC-R's claims based on a lack of recoverable damages. The Court has determined that oral argument is not necessary and, for the reasons below, the Court DENIES both Motions.

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 1

## II. BACKGROUND

In November of 2007, Homelink Mortgage served as lender to Borrowers Kenneth and Congetta Schwarz for the amount of $520,000 (the "Loan") to finance the purchase of property from Takao and Katherine Saito (the "Transaction"). Dkt. #39-1 at 5-7 ("HUD-1 Form"). The real property at issue is located at 198 Southeast 8th Street, Sammamish, Washington (the "Property"). *Id.* In the Transaction, the Borrowers purportedly agreed to purchase the Property from Sellers for a total purchase price of $650,000, with $125,000 as a cash-to-close down payment from the Borrowers own funds. *Id.* The HUD-1 form lists Homelink Mortgage as the lender and does not make any reference to AmTrust Bank. *See id*.

Ticor served as the closing agent for the Transaction. *Id.*; Dkt. #7 at ¶3. Ticor's employee, Agnes Yip, was the escrow officer who closed the Transaction on Ticor's behalf. Dkt. #39-1 at 10-11.

On November 27, 2007, an employee of HomeLink forwarded closing instructions from AmTrust to Ticor. Dkt. #41 at ¶2.F; Dkt. #41-6. The first page of the Supplemental Closing Instructions identified the "Lender" as Homelink Mortgage, Inc. and the "Closing Contact" as Julie Akagi. Dkt. #41-7 at 2. Julie Akagi was the Office Manager for Homelink Mortgage with an email address at the domain of "homelinkmtg.com." Dkt. #41-6 at 2. The Supplemental Closing Instructions state at the top: "NOTE: If Lender above is shown as AmTrust Bank, do not call AmTrust Bank directly. Contact the Closing Contact at the phone number listed above with any questions regarding this loan closing." *Id*.

Agnes Yip, on behalf of Ticor Title, agreed to follow the closing instructions. Dkt. #39-1 at 16 (Yip Dep. at 100:19-21); Dkt. #39-1 at 10-11 (RFA Resp. Nos. 3 and 8). The Master Closing Instructions defined Ticor's authority at the closing for the Transaction, stating in part:

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 2

> In closing this loan, you must follow the instructions and satisfy the conditions set forth in these Master Closing Instructions, [and] the Supplemental Closing Instructions . . . all of which, taken together, constitute the closing instructions. Do not proceed unless you are fully prepared to follow these instructions. . . . Any and all modifications to the Closing Instructions must be in writing and executed by the Lender.
>
> The Closing Agent will be liable for losses incurred by the Lender as a result of closing a loan with the knowledge that errors were contained in any documents or instructions. If the Closing Agent determines that a loan cannot be closed in accordance with these Closing Instructions, . . . do not proceed to closing without further instructions from the Lender.

Dkt. #39-1 at 22. The Supplemental Closing Instructions emphasized strict compliance, providing:

> YOU MUST READ ALL CLOSING INSTRUCTIONS THOROUGHLY PRIOR TO COMMENCING THE CLOSING AND CONTACT (JULIE AKAGI) IMMEDIATELY IF FOR ANY REASON YOU CANNOT COMPLY WITH THEM. . . .

*Id.* at 35.

The Supplemental Closing Instructions further specifically provided, in relevant part:

> You, as Closing Agent, must halt the closing proceedings (do not fund the loan or file any documents) and immediately call AmTrust Bank at (866) 588-5995 if you or your employees or agents observe any of the following:
> . . .
> • Payoffs other than to clear title: If funds are to be disbursed for any reason other than (i) to individuals or entities specifically mentioned in the Sales Contract, (ii) to pay off or otherwise insure that Lender has a first and superior deed of trust or mortgage lien, . . ., (iii) to pay fees paid to individuals or entities that are customary and or prevalent for standard mortgage lending transactions, (iv) to pay off legitimate mechanics or materials [liens], tax liens or judgment liens or (v) to pay down or off creditors of the Borrower required to satisfy underwriting conditions.

*Id.*

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 3

On November 29, 2007, Ticor received an incoming wire transfer in the amount of $126,810.08, purportedly to pay Borrower Schwarz's cash-to-close obligations. Dkt. #39-1 at 46. On or around the same day, AmTrust sent the Schwarz Loan funds in the amount of $520,000 to Ticor to fund the Loan. In turn, on November 30, 2007, Ticor wired $125,000 to Mt. Rainier National Bank account number xxxxxx3601, an account held in the names of Canterbury and Francis Fitzmaurice. Dkt. #39-1 at 50; Dkt. #39-1 at 54-55. Then, on December 3, 2007, the sum of $125,000 was debited from Canterbury's bank account to purchase a cashier's check made out to Borrower Schwarz. Dkt. #39-1 at 51-52.

After the closing, the Schwarzes made mortgage payments for nine months and then defaulted in October 2008. *See* Dkt. #41-15. In February 2009, AmTrust Loss Mitigation obtained an appraisal of the Property. The appraisal provided three different sale prices ranging from $595,000.00 to $750,000.00 depending upon how the Property was being marketed for sale. Dkt. #41-16. Armed with the appraisal, AmTrust agreed to accept a Grant Deed in Lieu of Foreclosure (the "Deed in Lieu") dated May 6, 2009, from the Schwarzes for the stated amount of $549,044.56. Dkt. #41-17.

Eventually AmTrust sold the Property by Special Warranty Deed dated December 1, 2009, to third parties for the sum of $257,900.00. Dkt. #41-19. Six years later, after it took over as receiver, Plaintiff FDIC-R filed this action seeking to recover the alleged loss upon the re-sale of the Property from Ticor. FDIC-R's sole cause of action claims Ticor breached the terms of the Supplemental Closing Instructions, an alleged contract between Ticor and AmTrust, and, as a result, AmTrust was damaged. *See* Dkt. #1.

### III.   DISCUSSION

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 4

## A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

## B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff FDIC-R argues that there is no genuine issue as to any material fact and that Defendant Ticor is liable for breach of contract as a matter of law. Dkt. #39 at 1. FDIC-R argues that "the undisputed evidence confirms that the Closing Instructions were valid

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 5

agreements which (1) prohibited Ticor Title from disbursing Loan proceeds to third parties other than for the purpose of clearing title, and (2) required Ticor Title to halt the Loan closing and contact AmTrust if Ticor Title, its employees, or agents became aware of, among other things, a payoff other than to clear title." *Id.* at 9.  FDIC-R argues that Ticor "violated this prohibition in the Closing Instructions, leading to damages resulting from losses on a mortgage loan that never should have closed."  *Id.*  FDIC-R argues that the closing instructions constituted a valid contract, citing, *inter alia*, *FDIC as Receiver for IndyMac v. First Am. Title Ins. Co.*, Case No. SACV 10-0713 DOC, 2011 U.S. Dist. LEXIS 94842 at *3 (C.D. Cal. Aug. 24, 2011) ("[b]y signing the Closing Instructions, [defendant] entered into a contractual relationship"); *Kazman v. Land Title Co.*, Case No. C11-1210-RSM, 2014 U.S. Dist. LEXIS 4071, at *9 (W.D. Wash. Jan 13, 2014)).  Dkt. #39 at 10.  FDIC-R argues that Ticor cannot credibly deny that it agreed to follow AmTrust's closing instructions in conducting the Closing, or that it received a fee for doing so.  *Id.*  FDIC-R argues that Ms. Yip admits in her deposition that Ticor breached the closing instructions.  *See id.* at 6-8.

In Response, Ticor focuses on disputes of material fact.  Ticor argues that:

> …Plaintiff's motion either omits entirely or glosses over significant information within documents in AmTrust's own loan file. Instead, to support its motion, Plaintiff relies completely upon the pre-litigation examination under oath testimony of Agnes Yip, a former employee of Ticor, taken well before this action was even commenced. Prior to that examination, Ms. Yip only reviewed four or five documents relating to the underlying transaction. Moreover, throughout the examination, FDIC-R counsel, Orlando Villalba, failed to refresh Ms. Yip's recollection regarding the seven (7) year-old transaction at all; rather, he showed her documents out of order, one at a time, read from them and then essentially asked her to confirm his own interpretation and understanding of those documents. And, as this litigation had not yet been commenced, the context in which Plaintiff was asking the questions was not clear.

1
2
3
4
5
6
7
8
9
10
11
12

> FDIC-R counsel did not provide Ms. Yip with her entire escrow file and asked her to recall it or the facts of the transaction. Rather, he fired off leading and testimonial questions regarding the transaction, which were almost always met with a response of her not recalling what happened. Still, after getting that response, FDIC-R counsel pressed Ms. Yip with isolated documents followed by more leading questions in an attempt to bolster what would ultimately become Plaintiff's case against Ticor. Each question was met with an objection from Ticor's counsel.
>
> When given the opportunity to review her file as a whole, however, Agnes Yip recalls quite a different set of events. Ms. Yip was not later deposed in the context of the filed litigation. However, as set forth in her Declaration submitted herewith, she has now seen the entire available closing file and related documents from AmTrust's own records. Her deposition only serves now to create fact issues regarding the underlying transaction, what Ticor representatives now recall and what the loan and correspondence documents themselves reveal.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dkt. #49 at 2. Ticor first disputes the assertion that AmTrust and Ticor entered into a contract. Ticor argues that the "unambiguous and plain language of the Supplemental Closing Instructions listed HomeLink, not AmTrust, as the lender in the subject transaction." Dkt. #49 at 3. Ticor points to the first page of the Supplemental Closing Instructions. *Id.* (citing Dkt. #41-7 at 2. Further, on the second page of the Supplemental Closing Instructions, Ticor argues it was told "[w]hen instructed to alert, notify and/or contact anyone herein … Closing Agent must do so by telephone and wait for further instruction from Lender before proceeding to close the loan." *Id.* at 10 (citing Dkt. #41-7 at 3). Ticor argues that the lender was HomeLink, and that "all of Ticor's communications and interactions for the subject transaction were with HomeLink, not AmTrust." *Id* (citing Dkt. #52 at ¶¶ 5-6 and Dkt. #51 at ¶¶ 9-11). Ticor acknowledges that the closing instructions elsewhere indicate that it should "call AmTrust Bank at (866) 588-5995," but states that "in one instance Ticor is being told not to contact AmTrust and instead to contact HomeLink, and in another it is being instructed to contact

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 7

AmTrust." Dkt. #49 at 11. Ticor argues that, "as the drafter of the Instructions, ambiguities are to be construed against Homelink, not Ticor." *Id.*  (citing *Taylor-Edwards Warehouse & Transfer Co., of Spokane, Inc. v. Burlington Northern, Inc.*, 715 F.2d 1330 (9th Cir. 1983)).

On Reply, FDIC-R argues that "AmTrust's label [is] on each and every page of the Closing Instructions," that AmTrust funded the Loan, and that "Ms. Yip testified that AmTrust was the lender and Homelink Mortgage was the mortgage broker." Dkt. #56 at 2. Ticor argues that the closing instructions were not ambiguous because there is "no alternate meaning to be drawn from an instruction that specifically directs the closing agent to 'halt the closing proceedings (do not fund the loan or file any documents) and immediately call AmTrust Bank at (866) 588-5995.'" *Id.* at 3. FDIC-R argues that AmTrust was the lender because it funded the loan and provided the closing instructions. *Id.* at 3-5.

The Court has reviewed the quoted portions of Ms. Yip's deposition testimony, as well as the HUD-1 file, Master and Supplementary Closing Instructions, and the supporting declarations to these Motions. The key documents show that HomeLink, not AmTrust, was listed as the lender in this Transaction. Ms. Yip's deposition does not change this fact. There is at the very least a question of fact whether it reasonably appeared to Ticor that HomeLink was the lender for purposes of the closing instructions when they reference the "lender." The instructions appear to constitute a contract between Ticor and Homelink rather than AmTrust, despite the deposition testimony of Ms. Yip. Furthermore, there is evidence that HomeLink, not AmTrust, contacted Ticor and sent Ticor the Master and Supplementary Closing Instructions. The Court cannot conclude from the record before it that the closing instructions constitute a contract between AmTrust and Ticor. Because the Court cannot discern whether there was a contract between AmTrust and Ticor, summary judgment cannot be granted in

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 8

favor of FDIC-R on its contract claim, and the Court need not address whether Ticor breached the terms of the closing instructions.[1]

### C. Defendant's Motion for Summary Judgment on Damages

Ticor argues that it is indisputable that AmTrust suffered no damages and that, under Washington law, "[a] breach of contract is actionable only if the contract imposes a duty, the duty was breached, **and the breach was a proximate cause of damage to the claimant**." Dkt. #40 at 11 (citing *Northwest Independent Forest Mfrs. V. Deparment of Labor and Industries*, 78 Wn. App. 707, 899 P.2d 6 (1995)) (emphasis in original). Ticor argues that "[a] greater degree of certainty is required to prove the **fact** of damages than the **amount** of damages…." *Id.* (citing *C 1031 Properties, Inc. v. First American Title Ins. Co.*, 175 Wn. App. 27, 33, 301 P.3d 500 (2013)) (emphasis in original). Ticor argues that (1) AmTrust suffered no damages or loss as a result of its election to accept the Deed in Lieu; and (2) even if it did suffer a loss, such loss was not in any way proximately caused by Ticor's alleged breach of the Supplemental Closing Instructions. *Id.*

In Response, FDIC-R argues that a deed in lieu of foreclosure does not immunize third parties from liability under Washington law. Dkt. #53 at 8-9 (citing *Glenham v. Palzer*, 58 Wn. App. 294, 298 (Div. I, 1990). FDIC-R argues that Ticor fails to cite to case law directly on point, and that case law from California, Arizona, and Oklahoma supports its position that anti-deficiency statutes should not be applied to third parties. *Id*. at 10-12. FDIC-R argues that Ticor's reliance on the appraisal values is misplaced because such appraisals are inadmissible

---

[1] The Court notes it is unclear from the closing instructions whether Ticor should have contacted HomeLink, AmTrust, or both in the event of an issue with the Transaction. Ticor is directed to call AmTrust at a certain phone number; however, at the top of the Supplemental Instructions Ticor is directed, in all capital letters, to call Julie Akagi, office manager at HomeLink. The closing instructions repeatedly direct Ticor to contact the lender, but, as the Court previously stated, a reasonable person might have thought HomeLink was the lender. Ambiguities in a contract are to be construed against the drafter. *Taylor-Edwards, supra*. Given all of this, it is not at all clear to the Court that Ticor's failure to contact AmTrust constitutes a breach.

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT - 9

hearsay and that "a far better measure as to the value of the Property is that amount which it was sold for on the open market." *Id.* at 14.  FDIC-R argues that Ticor's actions proximately caused the damages at issue because Ticor failed to follow the instructions to stop the transaction and notify AmTrust, which would obviously have prevented the subsequent damages. *Id.* at 17-18.

On Reply, Ticor argues that the acceptance of the deed in lieu should bar AmTrust's recovery of any loss in value to the Property from Ticor as a third party, citing cases discussing the issue in the context of determining a lender's right to insurance proceeds, Dkt. #40 at 12 (citing *MBank, Inc. v. State Farm Fire & Cas. Co.*, No. 03:10-CV-01276-AC, 2011 WL 6182421 (D. Or. Dec. 13, 2011); *Rosenbaum v. Funcannon*, 308 F.2d 680, 684 (9th Cir.1962)), and citing courts in other jurisdictions, *id.* (citing *Pacific Inland Bank v. Ainsworth*, 41 Cal.App.4th 277, 279–280, 283–284, 48 Cal.Rptr.2d 489 (1995)).  Ticor argues that, even if it did breach a contract by failing to halt the Transaction and by failing to contact AmTrust, this did not proximately cause damages to AmTrust because "[t]he borrowers in this case, the Schwartzes, made eight payments on the loan before it went into default," and because "[a]fter payments ceased, AmTrust didn't suffer a loss as it still had the benefit of its bargain, a debt secured by property worth, according to the appraisal it obtained at the time it issued the loan, $650,000.00." *Id.* at 15-16.

The Court finds that, although the deed in lieu of foreclosure extinguished the Borrowers' debt, it did not automatically immunize third parties from liability under Washington law.  Ticor's citations to factually distinct out-of-state case law fail to convince the Court to deviate from this conclusion.  Further, the Court finds that there are sufficient questions of fact as to the amount of damages and proximate cause to preclude summary

judgment. That the borrowers made payments, that there were several transactions between the date of the loan and the realization of damages, or that the entire process took years to unfold does not particularly surprise the Court. It is unclear how a title company could breach these closing instructions, the borrower engage in mortgage fraud, and the lender be damaged in a more direct way. Accordingly, the Court will deny Ticor's Motion. Ticor is free to raise its questions of fact as to damages at trial.

### IV.  CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff FDIC-R's Motion for Partial Summary Judgment, Dkt. #39, and Defendant Ticor's Motion for Summary Judgment, Dkt. #40, are DENIED.

DATED this 14 day of December, 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE